FILED
CLERK

4/23/2026 11:16 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
UNITED STATES OF AMERICA,          : 26-cr-00101-NJC
                                   :
                                   :
   - versus -                      : U.S. Courthouse
                                   : Central Islip, New York
STEPHEN SHAPIRO,                   :
                                   : April 20 2026
             Defendant             : 2:15 p.m.
------------------------------X

TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT
BEFORE THE HONORABLE ARLENE R. LINDSAY
UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**

**For the Government**:          **Joseph Nocella, Jr., Esq.**
                                 Interim United States Attorney

                         **BY:   Kaitlin McTague, Esq.**
                                 United States Attorneys Office
                                 Long Island Courthouse
                                 610 Federal Plaza
                                 Central Islip, NY 11722

**For the Defendant**:           **Saul Bienenfeld, Esq.**
                                 Bienenfeld Law
                                 680 Central Ave, Suite 108
                                 Cedarhurst, NY 11516

**Transcription Service**:       **Transcriptions Plus II, Inc.**
                                 61 Beatrice Avenue
                                 West Islip, New York 11795
                                 RL.Transcriptions2@gmail.com

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

Proceedings

2

THE CLERK:  Calling 2026-cr-101, *The United States of America v. Stephen Shapiro.*

Please state your appearances.

MS. MCTAGUE:  Good afternoon, your Honor. Counsel Kaitlin McTague for the government.

THE COURT:  Good afternoon.

MR. BIENENFELD:  Saul Bienenfeld, 680 Central Avenue, Cedarhurst, New York for the defendant Stephen Shapiro.  Good afternoon, Judge.

THE COURT:  Yes, good afternoon.  Mr. Bienenfeld?

MR. BIENENFELD:  Bienenfeld, correct.

THE COURT:  Bienenfeld.  Sorry.  All right. Let's swear in the defendant.

THE CLERK:  Please rise and raise your right hand.

S T E P H E N   S H A P I R O,

    called as a witness, having been first duly sworn,

    was examined and testified as follows:

THE COURT:  All right.  Mr. Shapiro, I want to go over the manner in which the government is proceeding with this case.  They are proceeding by what we call an information.  The information is a process by which they, they meaning the government, avoids presenting the facts that they're aware of to a grand jury for a grand jury to

Proceedings

review and make a determination as to whether or not there's probable cause to charge you with the crimes that they believe you committed.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  All right.  So by waiving indictment, you essentially waive the right to have the grand jury review that process or review those complaints by the government and make a formal finding on the charge against you.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Okay.

MS. MCTAGUE:  Your Honor, I apologize, given that there isn't a court reporter here, the defendant answered in the affirmative to both of your questions but his microphone was not on, so I just alerted defense counsel.

THE COURT:  Okay.  That's fine.  Did we capture those answers, Rob?

THE CLERK:  It should have, yes.

THE COURT:  All right.  Well, in any event, the record indicates and I observed that Mr. Shapiro nodded and said yes to my questions.

All right.  So having been charged with an information, the information -- let me describe to you, Mr. Shapiro.  I'm sure you read it but I'm going to

4

Proceedings

review it with you.  The information charges that in or about and between January 2024 and September 2025, those being approximate dates, that within the Eastern District of New York you did knowingly and intentionally possess matter which contained visual depictions.  And there are identification numbers provided in the information.  They are identified by digits.  It is indicated that these depictions or digital images have been mailed and shipped using interstate and foreign commerce, and that the materials contained therein contain visual depictions of one or more minors engaging in sexually explicit conduct in violation of Title 18 U.S. Code Sections 2252(a)(4)(B) and 2252(b)(2).  Those are the allegations.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  And with respect to those allegations, how do you plead at this time?

THE DEFENDANT:  Not guilty.

THE COURT:  Okay.  Now, the question that we have to address next is your bail pending resolution of this case.  I received an application, actually two applications, which I understand you may have agreed to.

The first applies to your right to a speedy trial.  Having been charged with this crime, you have a right to a speedy trial.  And typically the right to a

Proceedings

5

speedy trial is seven days from the date of the filing of the accusatory instrument.  And so it seems that you, presumably with the consent of your lawyer or after consulting your lawyer, have agreed to extend the right to a speedy trial to the following extent.

That the period from today, April 20th, until May 21 are excluded from calculating the time period for your speedy trial rights.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  So if it's normally 70 days and you've excluded 30 of those, you in effect give the government more time than the law allows the government to prosecute this case.  Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  Now, I understand that the reason you agree to do this is because you want to talk to the government or have your attorney talk to the government about the possibility of disposition.  Is that right?

THE DEFENDANT:  Yes.

THE COURT:  Has anyone promised you anything to get you to waive your speedy trial rights in the fashion I've described?

THE DEFENDANT:  No.

THE COURT:  Any promises or have threats been

6

Proceedings

made to induce you to do that?

THE DEFENDANT:  No.

THE COURT:  Okay.  And you understand what I've described?

THE DEFENDANT:  Yes.

THE COURT:  All right.  And Mr. Bienenfeld, you're satisfied that this is in his best interest?

MR. BIENENFELD:  Yes, your Honor.

THE COURT:  Okay.  All right.  So I find that that waiver is knowingly and voluntarily entered into, the waiver from today until May 21st, and it's in the best interest of the government to allow.

All right.  So now we go to the terms of your release pending a disposition or trial in this case. I've been provided a proposal which the government and Mr. Bienenfeld, your lawyer, worked out.  I've reviewed it.  I'm satisfied that it meets any concerns the Court may have with respect to your release.

And so I am going to order, Mr. Shapiro, that you be released on a bond of $100,000 unsecured.  But there are important conditions to your release which I want to review with you.

You are going to be under the supervision of Pretrial Services.  I think you've actually -- some of the Pretrial Services representatives were here in court.

Proceedings

You may have even met them.  But they will be the persons who are responsible for ensuring you comply with these conditions.

You're to surrender your passport by April 20th.  Have you done that already?

MR. BIENENFELD:  It's right here, Judge.

THE COURT:  Okay.  Pretrial Services is present so they'll take possession of the passport.  And that means that you're not permitted to leave the country for any reason without court permission.  So if something comes up and you need to go, Mr. Bienenfeld could write to the Court and seek permission for you to be relieved of that, to give you limited relief from that provision. But without court permission, you're in violation of your bail.

You're not to leave New York State, New Jersey, and apparently on March -- is it May the 8th?

MR. BIENENFELD:  May.  Yeah, he's going to be moving his son out of the dorm in Pennsylvania.

THE COURT:  Okay.

MR. BIENENFELD:  So he just needs that one day to be in Pennsylvania.

THE COURT:  All right.  That's fine.

MR. BIENENFELD:  And he has an office -- I don't think I made it clear.  It's an office in Fairfield

8

Proceedings

County, Connecticut. Usually he doesn't have to be there but if he does, I just wanted Fairfield County, Connecticut to be an exception.

THE COURT: Okay. Then I would suggest this. You're limited to New York State and New Jersey. You have permission to go on May the 8th to Pennsylvania for your son. To the extent that you have to go to to the Fairfield, Connecticut office, which is intermittent, let Pretrial Services know when you're going to go.

THE DEFENDANT: Okay.

THE COURT: You're permitted to go but just give them the heads up. If you go without giving them the heads up, that would be a violation. All right?

THE DEFENDANT: Understood.

THE COURT: Your residence is at 42 Bayberry. You're to maintain your residence at that location.

There are a number of other important provisions because of the nature of the crime charged. You're going to be subject to a curfew. Just get that out. Actually no curfew. Is that right? I think that's -- I don't know why we would need a curfew.

MS. MCTAGUE: Your Honor, according to the Adam Walsh conditions, he does at minimum have to be on a curfew. I don't believe that the exact parameters of that curfew have been set yet.

Transcriptions Plus II, Inc.

Proceedings

THE COURT:  All right.

MS. MCTAGUE:  And that is on the final page of the -- it's point number 6 of Pretrial's recommendations.

THE COURT:  I see it.

MS. MCTAGUE:  Subject to curfew with location monitoring.

THE COURT:  Yes.

MR. BIENENFELD:  Your Honor, I believe it's all discretionary.  I've been told that it's not discretionary here.  But if you want to hear my argument, I'll be happy to make my legal argument why it should be discretionary and not needed in this case.

THE COURT:  All right.  Go ahead.  Of course I'm not going to cut off your right to an argument.

MR. BIENENFELD:  I appreciate it.

THE COURT:  Yes.

MR. BIENENFELD:  Well, I mean Pretrial is asking for GPS monitoring but under the Bail Reform Act, the question is whether that condition is necessary, not whether it's available.  And in this case, it's not.  The charge here is possession.  It's not production, it's not distribution, it's not any form of contact offense.

As set forth in the information, the allegation is limited to images stored on two personal devices over a period, a long period of time.  There's no allegation

10

Proceedings

whatsoever of in-person content, travel to meet a minor, or geographically driven activity.

That matters because GPS monitoring regulates movement and there is simply no nexus between movement any alleged conduct in this case.

Second, the government's concern, or Pretrial Services' concern, if any, is plainly about digital behavior, not physical location.

THE COURT:  Yes.

MR. BIENENFELD:  And GPS monitoring does not do anything to address that.  It does not restrict internet access, monitor device usage, or prevent the type of conduct alleged here.  So it does not mitigate the risk that the government has identified.

Third, we're not asking the Court to proceed without any safeguards but we are proposing conditions that directly target the alleged conduct such as device monitoring, restricted internet use, no contact with minors under 18, supervision through Pretrial Services. And those conditions go to the actual risk.  GPS monitoring does not.

And fourth, the GPS monitoring has no meaningful incremental protection.  It is at best retrospective.  It tells you where somebody was, not what they did.  And it does not ensure compliance with the

Transcriptions Plus II, Inc.

11

Proceedings

conditions that actually matter in this case.  What it does is it imposes a substantial and unnecessary burden, including interference at work, daily functioning, the presumption of innocence, and without advancing statutory goals.

Finally, your Honor, this is a possession case tied to devices, not conduct in the community.  The statute requires the conditions be carefully tailored, not imposed reflectively.  And because GPS monitoring bears no relationship to the charged conduct and does not enhance safety or compliance, it is not the least restrictive condition available.

So I respectfully request that the Court decline to impose ankle monitoring and instead adopt targeted conditions that we have proposed otherwise.

THE COURT:  All right.  I tend to agree with that but I'll allow the government to respond.

MS. MCTAGUE:  Thank you, your Honor.  Just two points.  While the defendant is charged with possession of child pornography, counsel's argument that the defendant's conduct is just mere possession and nothing else that borders on receipt or production is misleading.

The defense is aware, defense counsel and the defendant is aware that he participated in a conversation with an undercover officer whereby the defendant sends a

12

Proceedings

photograph of his underage minor niece who was in a uniform. She was clothed, so that in and of itself is not CSAM, but it is highly inappropriate. And in that conversation with the undercover noted that he had just molested her.

So that photograph in and of itself does not constitute child sexual based material but the context of the conversation and the age of the victim, the age of the child who is a family member of the defendant, is highly indicative of the defendant's behavior.

So just to say that the defendant's conduct is just merely limited to the charge is misleading given what has been brought to their attention.

THE COURT: All right.

MS. MCTAGUE: Your Honor, in regards to the GPS monitoring, counsel has brought that to my attention before coming before your Honor and to Pretrial Services. And really the crux of the issue is there is no other way for Pretrial to monitor the defendant's compliance with location monitoring. The defense counsel has brought up oh perhaps you can monitor his phone. That's a search so they cannot do so.

So the ankle monitoring is the only way that Pretrial --

THE COURT: Why can't they monitor his phone?

13

Proceedings

MS. MCTAGUE:  Well, they can't search his phone.  There's no way for them to monitor that.  And I'm sure Pretrial can speak more specifically to that.

THE COURT:  I thought there was the ability to monitor a phone.

MS. MCTAGUE:  Not locate --

THE COURT:  In fact, it's one of the provisions for additional conditions of release.  You can't monitor a phone?

PRETRIAL OFFICER:  So for cyber monitoring we can in order to monitor what they're doing on the phone.  However, we can't track GPS location on phones.  It's unlawful at the pretrial level.  So that's one of the reasons why we can't use a cell phone --

THE COURT:  But you can monitor his usage of the phone to contact inappropriately a child or to engage in downloading images, correct?

PRETRIAL OFFICER:  Yes.  Just not for electronic -- not for location monitoring purposes.

THE COURT:  Okay.

PRETRIAL OFFICER:  It doesn't collect GPS data.  That's unlawful.

THE COURT:  I got it.  So essentially his whereabouts aren't necessarily available to you but you can view either retroactively or prospectively, not

14

Proceedings

prospective, retroactively and even as it's occurring what he's viewing.  Is that right?

PRETRIAL OFFICER:  Correct.

THE COURT:  Okay.  All right.

MS. MCTAGUE:  So your Honor, that's as to his devices and his compliance in regards to what he's using his phone for.  But for the location monitoring, that can only be done via ankle monitoring which is standard in these cases and others.  They wouldn't be able to tell if the defendant is complying with the terms of where he is permitted to go without that.

MR. BIENENFELD:  Your Honor, there is a least restrictive app called Life 360 which he already subscribes to where if I give them the password, they will know exactly where that phone is at all times.

THE COURT:  So are you willing to do that?

MR. BIENENFELD:  And we're definitely willing to do that.

THE COURT:  Okay.

PRETRIAL OFFICER:  Unfortunately, due to -- because it's a pretrial agency, the statute limits our ability to search and that would be considered a search and it's not a sanctioned supervision method by the AO, so we wouldn't be authorized to monitor the defendant that way.

15

Proceedings

THE COURT:  Even with the consent of the defendant?

PRETRIAL OFFICER:  Right.

THE COURT:  Why is that?

PRETRIAL OFFICER:  We're very limited.  It's a community supervision agency.  They are presumed innocent until proven guilty.  So we're very limited in how we can monitor locations.

THE COURT:  But it's not -- I mean it may be a policy of Pretrial Services but there's no finding of guilt here.  If the defendant is essentially saying listen, rather than putting an ankle bracelet on me I'm willing to give you this life app, or access to a life app which will tell you where I am at all times, why is that a presumption of guilt?

MS. MCTAGUE:  Your Honor, can I be heard as to that and then Ms. Sanchez can speak for Pretrial.

THE COURT:  Yes.

MS. MCTAGUE:  Two issues that I see with that just on a forefront.  One is that the defendant is in a position to pay for this application and thus then by his argument get around the ankle monitor which is not --

THE COURT:  What does that mean get around?  I mean he's going to be monitored one way or the other, no?

MS. MCTAGUE:  Your Honor, other defendants

16

Proceedings

are -- per terms of release in regular cases, both these types of cases and others where defendants are released it is standard for them to be on an ankle monitor so Pretrial can monitor that.

Now, the defendant is saying well I can give you access to an application. While that's inherently unfair in regards to --

THE COURT: I don't buy that argument --

MS. MCTAGUE: If I can pay for an application --

THE COURT: -- so if you have another argument --

MS. MCTAGUE: I'm sorry.

THE COURT: If you have another argument, fine. But you know --

MS. MCTAGUE: Well, your Honor, that is --

THE COURT: -- a whole question is whether or not, at least as I understand it, is whether or not you can have access or knowledge, present knowledge, of his whereabouts. So address that. How is that deficient as to providing the government with present knowledge of his whereabouts?

MS. MCTAGUE: That is -- it's not a tracker that is connected to his person that cannot be cut off or left somewhere or carried by someone else. If it's this

17

Proceedings

Life 360, who's to say that whatever the device is connected to is not another family member or a friend or someone who's taking it for him purporting to be him without Pretrial being able to verify that?

An ankle monitor is attached to the person. It cannot be cut off. If it is manipulated in any way or affected in any way, Pretrial gets a notification of that. But something that is a private company that is outside of Pretrial's control, then it can be handled by someone else, perhaps manipulated by someone else, if it's on the phone carried by someone else and Pretrial can't verify that.

PRETRIAL OFFICER: I would like to add so the administrative offices have a contract with BI monitoring software which is the company that monitors all the ankle monitors in the system. We are required to review every single GPS point generated by the ankle monitors and a GPS point is generated every one to three minutes. We also have access to their systems. We have agreements in place that allow us to go back and review GPS maps and gather additional data.

I don't know anything about this Life 360 app. I don't know what we would be authorized or not authorized to review and look at. I'm not sure how accurate it is, what platform it uses.

18

Proceedings

THE COURT: Here's what I'm going to do. I'm going to impose the GPS monitoring for now. However, if Mr. Bienenfeld was able to satisfy these questions you've asked about what's your access and what kind of system it is -- I mean I can't let you say we shouldn't use it because we're ignorant of what the terms of usage are. That doesn't make any sense to me. I think that you could be educated about it. If it's not viable, it's not viable. But if it's an alternative that's available, I'm open to the possibility of making use of it.

And maybe it's something -- I mean GPS monitoring is not exactly without cost. And so, you know, this argument that well he's rich and therefore he shouldn't be allowed to take advantage of whatever wealth he has, that doesn't mean anything to me.

MS. MCTAGUE: Your Honor, that wasn't my argument at all. It was moreover --

THE COURT: I thought the argument was, you know, he can afford to pay for this Life app and others can't so he's going to have the privilege of not wearing an ankle monitor.

MS. MCTAGUE: No, your Honor. My argument first and foremost was that we were provided no advanced information about this application until this --

THE COURT: Okay.

Transcriptions Plus II, Inc.

19

Proceedings

MS. MCTAGUE:  -- very arraignment.

THE COURT:  Okay.  And that's fine.  That's exactly my point right now.  So until you're educated and satisfied, I'm not going to allow it.  But that doesn't mean that it's forever shut, that door is forever shut.  If Mr. Bienenfeld can satisfy the government and Pretrial Services that this alternate system is a viable system which gives you the kind of information you need to do your job as Pretrial Services, then we'll take a look at it.  Okay?

All right.  So for now --

MR. BIENENFELD:  So in terms of curfew then can I be heard on curfew?

THE COURT:  I'm not sure that we were imposing a curfew.

MR. BIENENFELD:  Okay.  That's wonderful.

THE COURT:  It's not checked.  There's no curfew checked.

MS. MCTAGUE:  I believe there --

PRETRIAL OFFICER:  So in terms of setting a curfew, it's up to either the discretion of our agency or if your Honor would like to set a curfew.  We usually just put it at the direction of Pretrial because we try to work around work schedules and other things that come up.

Transcriptions Plus II, Inc.

20

Proceedings

THE COURT:  All right.  There's no curfew proposed and so I'll hear from Mr. Bienenfeld.  What's the proposal on curfew?

MR. BIENENFELD:  Because of his religious observance that he goes to synagogue at night and goes to classes at night, I was looking for 11:30 p.m.

THE COURT:  Any objection?

PRETRIAL OFFICER:  I would -- from a supervision standpoint, I would say that he would have to provide his schedule, his synagogue schedule, and whatever classes he's attending and then we would have no issue if that's valid.

THE COURT:  Okay.  11:30 p.m. curfew but provide the substantiation for the 11:30 time.

PRETRIAL OFFICER:  And on the evenings that he's not attending services?

THE COURT:  11:30 curfew.  We're not going to do Monday, Tuesday 11:30 --

PRETRIAL OFFICER:  Okay.

THE COURT:  -- and Wednesday at 9 o'clock.  No.  11:30 curfew.

PRETRIAL OFFICER:  Okay.

THE COURT:  I think that's reasonable for an adult.  And in this case if he's got activities that he's got to attend that are, you know, bona fide, Mr.

21

Proceedings

Bienenfeld will provide the substantiation for that. Then we'll make it 11:30 for the week.

Okay.  So at the moment we're going to order the imposition of the bracelet to monitor his whereabouts until any further application is made to the Court.

Just so it's clear, the defendant may not have contact or association with any individual under the age of 18 during the pendency of this case unless that minor is in the presence of another adult who's either the parent or legal guardian of the minor.

He may not communicate with any individual under the age of 18 in writing or over a telephone or through electronic means during the pendency of this case.

He's to avoid areas frequented by children under the age of 18.  That would include schoolyards, parks, playgrounds, fast food restaurants like Chuck E. Cheese or places like that, any arcades where children would be found.

He's to avoid all contact, direct or indirect, with any person who may be a witness or a possible victim in this case.  There's been a description of about what was it, a niece?

MS. MCTAGUE:  Yes.

THE COURT:  A niece.  That niece, I don't know

Proceedings

what the age of that niece is, but there's no contact with that niece in the absence of a legal guardian or parent being present.

Defendant may not possess any firearm or destructive device or dangerous weapon during the pendency of this case.

He's to undergo mental health evaluation and any other treatment that Pretrial Services indicates the subject to any objection that might be made to the Court. But that oversight is provided to Pretrial Services Agency.

He's to pay the cost of electronic monitoring and any required mental health treatment that he has to undergo. This is based on his ability to pay which my review of his finances indicates that he is able to pay.

He is not to use a computer or access the internet except as may be necessary for employment purposes only. Now, that's a very serious restriction, Mr. Shapiro. So stay off the computer. You may have to use it for business but, you know, that is so broad that -- it says not even Amazon is permitted. Do you understand that?

MR. BIENENFELD: Your Honor, I was wondering if we could carve out news articles and news channels.

THE COURT: Well, specify a news channel.

23

Proceedings

MR. BIENENFELD:  Fox.com, ABC.com, CNN --

THE DEFENDANT:  CNN, CNBC.

MR. BIENENFELD:  -- CNBC.

THE DEFENDANT:  New York Post.

MR. BIENENFELD:  New York Post.  What's the financial one?  Financial news network.  I don't know what it's called.  CNBC.

THE COURT:  All right.  Everything except the New York Post.  Any objection?

MS. MCTAGUE:  No, your Honor.

THE COURT:  Okay.  Only because the New York Post can be very salacious at times and I think we just keep it off the radar for now.

MR. BIENENFELD:  The New York Times then is okay?

THE COURT:  Yes.

MR. BIENENFELD:  Okay.

THE COURT:  But don't go beyond those specified here in this courtroom, okay?

MR. BIENENFELD:  Wall Street Journal, Judge?  Can we add that as well?

THE COURT:  That's fine.

MR. BIENENFELD:  Thank you.

THE COURT:  Wall Street Journal.  But that's it.  You know, you're going too far now.  You've got

24

Proceedings

enough.

All right. Pretrial Services is permitted to conduct random visits to your home so they can show up without prior notice. They can check your computer and your personal, you know, internet devices. They are going to install computer monitoring to make sure your computer is not being accessed and used for other purposes that are not permitted under this agreement. Again, you'll be paying the cost of that monitoring. And your smart phone, you'll tell Pretrial Services what cell phones you're using and they will be monitored. Okay?

MR. BIENENFELD: One more carve out if possible for banking purposes to pay bills and check his accounts?

THE COURT: Well, I don't think I restricted it for that usage. Okay? So yes, if he uses -- if he does online checking, online banking, that's permissible. Okay?

I think that lists the terms of his release.

MR. BIENENFELD: Judge, just one more issue. I'm sorry to disturb. In other cases similar to this, there were issues of WhatsApp. Pretrial Services had given me a lot of trouble when clients use WhatsApp. They don't like it and I don't know the reason. But he does have a son living in Israel and the only way he communicates with his son in Israel --

Transcriptions Plus II, Inc.

25

Proceedings

THE COURT:  One person on WhatsApp, your son.

MR. BIENENFELD:  Done.

THE DEFENDANT:  Both will be there.

MR. BIENENFELD:  Both sons will be there.

THE COURT:  They're both there?

MR. BIENENFELD:  Both sons.

THE DEFENDANT:  Over the summer.

MR. BIENENFELD:  Over the summer.

THE COURT:  You'll provide Pretrial Services the information, the contact information for both of them.  They must have a WhatsApp address.

MR. BIENENFELD:  Yeah.

THE COURT:  Give it to them.  That's the only two exceptions for the usage of WhatsApp.

MR. BIENENFELD:  Okay.

MS. MCTAGUE:  Your Honor, I believe there is an issue with WhatsApp.  Ms. Sanchez can speak to it.  But WhatsApp is an encrypted application which is a very specific issue.

THE COURT:  I use WhatsApp.  Let him call his sons in Israel on WhatsApp.  I use it all the time.

PRETRIAL OFFICER:  Yeah, I use it as well.  Just the monitoring.  WhatsApp is not allowing monitoring software to monitor it so --

THE COURT:  So every so often you'll inspect

Transcriptions Plus II, Inc.

26

Proceedings

his WhatsApp account on his phone and see what's going on.  Okay?

PRETRIAL OFFICER:  Okay.

THE COURT:  You know, he's got to be able to talk to his sons.  I understand why he would want to use WhatsApp.  It's a way to communicate without excessive phone charges.  But it's just those two.

PRETRIAL OFFICER:  That would just have to be specified on the bond because it's considered a search and I'm not authorized to do it.  So it means inspecting his WhatsApp app would just --

THE COURT:  It's his proposal, so --

PRETRIAL OFFICER:  Right.

THE COURT:  -- I think that you're well beyond the search exception.  Okay.  All right.  Anything else?

So I'll ask the government to include that. Well, the record is very clear that you're permitted to look at his phone for the purposes of determining what's the usage on WhatsApp and that it's consistent with what the Court has permitted so that to the extent you have any concerns about a search, that search for that specific purpose is permitted.  Is that satisfactory?

PRETRIAL OFFICER:  Yes.

THE COURT:  Okay.  All right.  I think that I have everything except -- you're going to -- do we have

27
Proceedings

that?

THE CLERK:  What's that?

THE COURT:  You were looking around to see -- I don't know if you were trying to tell me something.

THE CLERK:  No.

THE COURT:  Okay.

THE CLERK:  (Inaudible) the bond.

THE COURT:  All right.  Let's have the defendant sign the bond along with the supplemental conditions of release.  Oh, we have to include the WhatsApp stuff on that.

(Pause)

MR. BIENENFELD:  While he signs that, I just want the record to reflect that I did hand over his passport to Pretrial Services and I will hand over the Pretrial Services report as well.

THE COURT:  All right.  Thank you.

(Pause)

THE COURT:  Do we have a date from the district court?

THE CLERK:  May 21st at 11.

(Pause)

THE COURT:  Oh Ron, I'm not sure if I checked curfew 11:30.  Please hand that to -- pencil that in there.

28

Proceedings

THE CLERK:  (Inaudible).

THE COURT:  Yes.

(Pause)

MR. BIENENFELD:  We're not signing?  You want me to sign?

THE COURT:  We have the curfew.

THE CLERK:  We have the curfew.

(Pause)

THE COURT:  All right.  Mr. Shapiro, as we described, you're going to be released today subject to the conditions of release that we've discussed extensively on the record.

I do want to remind you that if you violate the conditions of your release this Court will reconsider the terms of your release and review the provisions of your bail.

You also have been appearance date scheduled before Judge Choudhury.  That's a district court judge that's in this building.  What floor is she on?

MS. MCTAGUE:  She's on the 10th floor.

THE COURT:  What is it?

MS. MCTAGUE:  Ten.

THE COURT:  Ten.  On floor ten.  You have a date before her on May 21st at 11 o'clock.  If you fail to appear before Judge Choudhury on that date or any date

Transcriptions Plus II, Inc.

29

Proceedings

that you're required to appear, a bench warrant will be issued for your arrest.  And I can assure you that the conditions of your release will be re-examined.  Okay?

I don't think there's anything else we need to address.  I'll turn to the government, anything else?

MS. MCTAGUE:  No.  Thank you, your Honor.

THE COURT:  Okay.  Mr. Bienenfeld?

MR. BIENENFELD:  Nothing, your Honor.  Thank you.

THE COURT:  All right.  Thank you, everyone.

MS. MCTAGUE:  Have a good afternoon.

THE COURT:  Yes, you too.

(Matter concluded)

-oOo-

30

# C E R T I F I C A T E

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **23rd** day of **April**, 2026.

_Mary Greco_

Transcriptions Plus II, Inc.